## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

CONTINENTAL RESOURCES, INC.,   )
P.O. Box 269000   )
Oklahoma City, OK 73126   )
   )
      Plaintiff,   )
   )
v.   )    Civil Action No. _____
   )
RYAN ZINKE,   )
in his official capacity as Secretary of the   )
United States Department of the Interior,   )
1849 C. Street N.W.   )
Washington, DC 20240;   )
   )
THE UNITED STATES DEPARTMENT   )
OF THE INTERIOR,   )
1849 C Street, N.W.   )
Washington, DC 20240; and   )
   )
GREGORY J. GOULD,   )
in his official capacity as Director of the   )
Office of Natural Resources Revenue of the )
United States Department of the Interior,   )
1849 C. Street N.W., MS 5134   )
Washington, DC 20240,   )
   )
      Defendants.   )
_____ )

## COMPLAINT

Continental Resources, Inc. ("**Continental**") brings this action under the Administrative

Procedure Act ("**APA**"), 5 U.S.C. §§ 701-706.  Continental challenges a demand Defendants

Ryan Zinke, as Secretary of the United States Department of the Interior, the United States

Department of the Interior, and Gregory J. Gould, as Director of the Office of Natural Resources

Revenue, (collectively, as "**Defendants**") have made for $503,054.26, plus interest, in additional

royalties on natural gas produced and sold during 2007-2008.  This case is similar to one already pending in this Court, *Continental Resources, Inc. v. Zinke, et al.*, Case No. 1:14-cv-00065-RDM (D.D.C.), covering similar claims by Defendants for the earlier period 2003-2006.

## JURISDICTION AND VENUE

1.       Continental challenges a January 19, 2016 decision of the Director of the Office of Natural Resources Revenue (the "**ONRR**") denying Continental's appeal of an Order to Report and Pay Additional Royalties issued by the ONRR on January 22, 2014 (the "**Order**"). That decision of the Director of the ONRR was deemed affirmed by the Interior Board of Land Appeals (the "**Board**") on August 15, 2017 (the "**Decision**").

2.       Continental seeks to have the Decision and the underlying Order declared unlawful, vacated, and set aside under section 10 of the APA, 5 U.S.C. § 706.  Continental has suffered legal wrong from, and is adversely affected or aggrieved by, the Decision and the underlying Order within the meaning of 5 U.S.C. § 702.

3.       The Decision is not subject to further appeal within the agency.  It constitutes the final action of the Department of the Interior (the "**Department**").  *Cont'l Res., Inc. v. Jewell*, 846 F.3d 1232, 1233-34 (D.C. Cir. 2017).

4.       This action arises under the APA, the Mineral Leasing Act of 1920 (30 U.S.C. §§ 181, *et seq.*), the Federal Oil and Gas Royalty Management Act of 1982 (30 U.S.C. §§ 1701-1759), as amended by the Federal Oil and Gas Royalty Simplification and Fairness Act of 1996 (Pub. L. No. 104-185, 110 Stat. 1700), the Due Process Clause of the Fifth Amendment to the United States Constitution, and the regulations of the ONRR regarding royalties, including 30

C.F.R. Part 206 (2007).[1]

5.      The Court has jurisdiction under 28 U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. §§ 2201-02 (declaratory relief).  An actual controversy exists between the parties within the meaning of the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02.  By operation of the APA, Congress has waived the sovereign's immunity from suit.

6.      Venue is proper for Continental's royalties claims under 28 U.S.C. § 1391(e)(1)(A) because defendant federal officers and agencies reside in this district, as well as under 28 U.S.C. § 1391(e)(1)(B) because a substantial portion of the challenged decision-making occurred in this district.

## THE PARTIES

7.      Plaintiff Continental is an Oklahoma corporation with its principal place of business in Oklahoma City, Oklahoma.

8.      Continental is now, and at all relevant times in the past was, a lessee under Department-administered leases in Washakie County, Wyoming.  The leases are within the Cottonwood Creek Unit (the "**Unit**"), designated as federal Agreement Number 891000463A (collectively, as the "**Leases**").

9.      Defendant Ryan Zinke is the Secretary of the Department and is sued in his official capacity.

10.     Defendant Department is a federal executive department of the United States government.

11.     Defendant Gregory J. Gould is the Director of the ONRR and is sued in his

---

[1] This Complaint cites to the 2007 version of the applicable regulations.  The substance of those regulations did not change in 2008.

official capacity.

## OVERVIEW

12.   The Decision directs Continental to pay $503,054.26, plus interest, in additional royalties for the period January 1, 2007, to December 31, 2008.  The Decision suffers from four fundamental flaws.

a.   Continental paid royalties in the belief that it was selling unprocessed natural gas at arm's length.  The Decision determined the sale was not at arm's length.  It so concluded because the ONRR thought Continental was affiliated with a limited liability company named Hiland Partners, LLC.  *See* 30 C.F.R. § 206.151 (2007) (defining "affiliate").  In fact, during 2007-2008, Continental sold unprocessed gas to a limited partnership named Hiland Partners, LP, a separately owned entity.  The Decision found affiliation with the wrong entity. That error affects the entirety of the Decision and alone is grounds for vacatur.

b.   Although the Department may rely only on the rationale it gave in the Decision, *Clean Air Council v. Pruitt*, 862 F.3d 1, 11 (D.C. Cir. 2017), even if it were free to raise a new rationale here, the administrative record does not support finding that Continental was affiliated with Hiland Partners, LP.

c.   The Decision further erred by comparing Continental's proceeds from the sale of unprocessed gas with Hiland Partners, LP's sales of  "residue gas" and "natural gas liquids."  Residue gas and natural gas liquids are manufactured by processing unprocessed gas. The Department's royalty regulations value the products of processing differently from how they value unprocessed gas.  The Department's attempt to compare sales of dissimilar products was arbitrary on the record here.

d.   In relying on Hiland Partners, LP's sales of residue gas and natural gas

liquids, the Decision invoked a regulation that applied only if Hiland Partners, LP were "the lessee" of the Leases.  This invocation was directly contrary to *Fina Oil & Chem. Co. v. Norton*, 332 F.3d 672, 673-74 (D.C. Cir. 2003) (the leaseholder's affiliate is not "the lessee" under the valuation rules for natural gas).

### GOVERNING STATUTORY AND REGULATORY PROVISIONS

13.    Under the Mineral Leasing Act of 1920 (30 U.S.C. §§ 181, *et seq.*), the Department issues and administers gas leases for federal lands.  Under such leases, private companies sell gas production directly, and the government charges the lessee royalties based on the "value of the production" removed or sold from the leased lands.  30 U.S.C. § 226(b)(1)(A).

14.    Pursuant to these statutes, the ONRR promulgated regulations establishing methods for determining the "value of production" for royalty purposes.  *See* Revision of Gas Royalty Valuation Regulations and Related Topics, 53 Fed. Reg. 1230 (Jan. 15, 1988) (codified at 30 C.F.R. § 206.152 (2007) (unprocessed gas) ("**Section 152**") and at 30 C.F.R. § 206.153 (2007) (processed gas) ("**Section 153**")).

15.    These regulations value gas based on different methodologies depending on certain qualities of the gas at issue – most importantly whether the gas is processed or unprocessed and the identity of "the particular entity to whom producers first sell the gas." *Fina Oil & Chem. Co. v. Norton*, 332 F.3d 672, 673-74 (D.C. Cir. 2003).

16.    Section 152 applies to the valuation of "all gas that is not processed and all gas that is processed but is sold or otherwise disposed of by the lessee pursuant to an arm's-length contract prior to processing." 30 C.F.R. § 206.152(a)(1) (2007).

17.    By contrast, Section 153 applies to the valuation of "all gas that is processed by the lessee and any other gas production to which this subpart applies and that is not subject to the

valuation provisions of § 206.152 of this part.  This section applies where the lessee's contract includes a reservation of the right to process the gas and the lessee exercises that right."  30 C.F.R. § 206.153(a)(1) (2007).

18.    Under Section 153, the value of the gas is determined by the combined value of the residue gas and the plant products following processing.  30 C.F.R. § 206.153(a)(2) (2007). Valuation of processed gas under Section 153 is governed in relevant part by two distinct provisions.  The first provision, 30 C.F.R. § 206.153(b) (2007), applies to "residue gas or any gas plant product sold under an arm's-length contract."  By contrast, the second provision, 30 C.F.R. § 206.153(c) (2007), applies to the valuation of "residue gas or any gas plant product which is not sold pursuant to an arm's-length contract."

## SALES AND PRIOR ONRR AUDITS

19.    On February 1, 1993, Bass Enterprises Production Company ("**Bass**") and Interenergy Corporation ("**Interenergy**") entered into a Sweet Gas Purchase Agreement (the "**Sweet Gas Purchase Agreement**") applicable to production from the Leases.  Bass and Interenergy were not affiliated entities.

20.    On January 1, 1996, Bass and Interenergy entered into a Sour Gas Purchase Agreement (the "**Sour Gas Purchase Agreement**") applicable to production from the Leases.

21.    On November 30, 1999, and effective November 1, 1999, Continental (as successor to Bass) and Wildhorse Energy Partners, LLC (as successor to Interenergy) ("**Wildhorse**") agreed to a price amendment to the Sour Gas Purchase Agreement previously entered into between Bass and Interenergy.  Continental and Wildhorse were not affiliated entities.

22.    On May 21, 2000, and effective January 1, 2000, Continental and Wildhorse

agreed to amend the parties' arrangement for the entire contract area by combining the Sweet Gas Purchase Agreement and Sour Gas Purchase Agreement into a single contract with a fixed price schedule (the "**Combined Purchase Agreement**").

23.      Under the Combined Purchase Agreement, Continental sold all of its unprocessed gas produced from the Cottonwood Creek properties to Wildhorse (the buyer).  The Combined Purchase Agreement uses a "percentage-of-index" pricing formula under which Wildhorse (the buyer) paid Continental a set price per thousand cubic feet of unprocessed gas based on a percentage of the published CIG Rocky Mountain index price.  The price formula under the Combined Purchase Agreement has not changed since its initial execution.  The term of the agreement extends from January 1, 2001, until production on the Cottonwood Creek properties ceases.  Continental has no right to terminate the agreement early or to require the buyer to renegotiate the price.

24.      On October 17, 2000, Wildhorse assigned its interest in the Sweet Gas Purchase Agreement, as amended, and its interest in the Sour Gas Purchase Agreement, as amended, to Hiland Partners, LLC.

25.      Hiland Partners, LP was formed in 2004 with assets previously owned and operated by Hiland Partners, LLC, including Hiland Partners, LLC's interests in the Sweet Gas Purchase Agreement, as amended, and the Sour Gas Purchase Agreement, as amended.

26.      Throughout 2007-2008, Continental sold all of its unprocessed gas produced from the Leases to Hiland Partners, LP pursuant to the Combined Purchase Agreement.

27.      Throughout 2007-2008, Hiland Partners, LP took title to the unprocessed gas at the wellhead meters.  The gas was commingled with production from other wells, and the total commingled gas stream was delivered to the Hiland Gas Processing Plant.  Hiland Partners, LP

processed the gas it purchased from Continental, and from other producers, and sold the residue gas to Rainbow Gas Company and gas plant products to KN Gas Gathering, Inc.  Both sales were at arm's length.

28.     Continental was not a party to Hiland Partners, LP's arm's-length sales of the residue and gas plant products that resulted from processing the gas.

29.     Continental, as the holder of the Leases, pays royalties on production under the Leases for all gas produced.

30.     In 2004, the ONRR audited Continental's payments of royalties on production from the Leases during June 1998 through December 2001.  The audit assessed Continental's royalty payments regarding sales made under the Combined Purchase Agreement to Hiland Partners, LLC during calendar year 2001, and the audit concluded Continental paid the appropriate amount of royalties for the period.  Continental had valued its production from the Leases under 30 C.F.R. 30 C.F.R. § 206.152 during both calendar year 2001 as well as during 2007-2008.  Although the Department accepted valuation under 30 C.F.R. 30 C.F.R. § 206.152 for 2001, the Department has now (without persuasive rationale for the change) demanded valuation of royalties under 30 C.F.R. § 206.153(c) (2007).

## AGENCY PROCEEDINGS AND DECISIONS AT ISSUE

31.     On October 8, 2009, the ONRR sent Continental an Audit Engagement Letter (Case No. 10-00297) for purposes of auditing Continental's federal natural gas production originating from the Unit during 2007-2008.  By December 14, 2009, the agency had concluded Continental was affiliated with Hiland Partners, LLC during 2007-2008 and sales between the entities were not at arm's length.  The ONRR did so because it believed Continental and Hiland Partners, LLC shared some common officers during 2000 to 2004.

32.     On January 22, 2014, the ONRR issued the Order, directing Continental to report and pay additional royalties of $503,054.26 plus interest for 2007-2008.

33.     In the Order, the ONRR identified three issues, all of which were based on the agency's incorrect claim that Continental sold gas from the Leases to Hiland Partners, LLC.  The ONRR claimed Mr. Harold Hamm, the Harold Hamm DST Trust, and the Harold Hamm HJ Trust owned Hiland Partners, LLC and Continental.  Therefore, the ONRR ordered Continental to (i) report its sales as non-arm's-length, instead of arm's-length, (ii) report and pay royalties on residue gas and gas plant products, instead of unprocessed gas, and (iii) accordingly allocate the residue gas and gas plant products.  As support, the agency enclosed a decision issued by the Director of the ONRR concerning the years 2003-2006.

34.     On February 21, 2014, Continental timely appealed the Order to the Director of the ONRR.  In that appeal, Continental argued:  (i) it sold gas to Hiland Partners, LP (and *not* Hiland Partners, LLC) during 2007-2008; (ii) the Order's rationale was improperly based on findings relevant only to 2003-2006; (iii) the gas at issue was sold by Continental as unprocessed gas (and not residue gas or any gas plant products) and therefore should be valued under Section 152; (iv) *even if* Section 153 were to apply, because Hiland Partners, LP sold its gas plant products pursuant to arm's-length contracts, 30 C.F.R. § 1206.153(b) (2007) ("**Section 153(b)**") should govern; (v) the ONRR had deviated without rational explanation from its prior conclusion that Continental properly applied Section 152 to prior production; and (vi) the ONRR's actions violated Continental's due process rights, which required Continental be provided fair notice. Continental also incorporated all arguments from its then-pending appeal relevant to the period 2003-2006.

35.     On January 19, 2016, the Director of the ONRR issued his decision (ONRR-14-

0010-O&G), upholding the Order.  The Director determined Continental and Hiland Partners, LLC were affiliated during 2007-2008, Continental's valuation of the gas as unprocessed was improper, and the gas should have been valued under 30 C.F.R. § 206.153(c) (2007).

36.     On March 3, 2016, Continental timely appealed that decision to the Board.  In that appeal, Continental argued, *inter alia*:   (i) the decision of Director of the ONRR and the underlying Order are contrary to law because Continental sold to Hiland Partners, LP (and *not* Hiland Partners, LLC) throughout 2007-2008; (ii) the decision and underlying Order are contrary to law because Continental and Hiland Partners LP were not affiliated and had opposing economic interests, and therefore Continental's sales to Hiland Partners, LP were at arm's-length; (iii) Section 152 (and *not* Section 153) applied to Continental's unprocessed gas production and sales; (iv) by its terms, Section 153 could not apply, and in fact thirteen years after *Fina Oil* was decided, the ONRR amended their rules to try to cure the problems their interpretation creates (*see* 81 Fed. Reg. 43338 (July 1, 2016)); and (v) assuming, *arguendo*, neither 30 C.F.R. §§ 206.152(a)-(c) (2007) nor 30 C.F.R. §§ 206.153(a)-(c) by their terms apply in this case, then the gross proceeds rule under 30 C.F.R. § 206.152(h) (2007) or 30 C.F.R. § 206.153(h) (2007) applies.

37.     On August 15, 2017, the Board dismissed Continental's appeal due to expiration of the 33-month period under 30 U.S.C. § 1724(h).  On page 2 of the opinion, the Board held, "Because the deadline has passed, the Secretary is deemed to have affirmed ONRR's decision and the Board no longer has jurisdiction over the appeal."

## DEFENDANTS' VIOLATIONS OF LAW

*The ONRR Incorrectly Determined Continental and Hiland Partners, LLC Were Affiliates and Incorrectly Determined the Combined Purchase Agreement Was Non-Arm's-Length.*

38.     The Decision is arbitrary and capricious, an abuse of discretion, and contrary to law because it contravenes the plain and unambiguous meaning of the regulations it purported to apply.

39.     The ONRR incorrectly determined Continental and Hiland Partners, LLC were affiliates and their sales contract was non-arm's-length under 30 C.F.R. § 206.151 (2007) during 2007-2008.  There is no evidence in the administrative record showing Continental sold any production to Hiland Partners, LLC during 2007-2008.  Because Continental did not sell gas to Hiland Partners, LLC during the period, any affiliation between the two is irrelevant to valuation of the gas.

40.     Continental notified the ONRR and the Board during the administrative appeals process that the correct transacting entities during 2007-2008 were Continental and Hiland Partners, LP.  Counsel for the ONRR also acknowledged before the Board that the ONRR incorrectly determined Continental and *Hiland Partners, LLC* were affiliates during 2007-2008 and that the decision of the Director of the ONRR incorrectly stated that Continental sold production to *Hiland Partners, LLC*.

41.     During 2007-2008, the administrative record shows Continental sold the relevant production from the Leases to Hiland Partners, LP under the parties' Combined Purchase Agreement.  The administrative record also shows the Combined Purchase Agreement was originally entered into by two indisputably non-affiliated parties who had opposing economic interests.  There is no evidence in the administrative record showing otherwise.

42.     For purposes of determining affiliation under 30 C.F.R. § 206.151 (2007), the administrative record also shows the ONRR found Mr. Hamm owned over 73% of Continental's stock shares.  However, contrary to law, the ONRR made no findings as to Mr. Hamm's percentage ownership interest in Hiland Partners, LLC.  The ONRR also reached the wrong conclusion because it relied on outdated information from 2000-2004 and looked at wrong entity.

43.     The administrative record also shows, for purposes of determining affiliation under 30 C.F.R. § 206.151 (2007), the ONRR found Mr. Hamm and Mr. Randy Moeder were "common officers" of Continental and Hiland Partners, LLC.  However, contrary to law, this is the only factor the ONRR applied.  The ONRR reached the wrong conclusion because it relied on outdated information and looked at the wrong entity.

44.     Had the ONRR assessed the correct entities, the ONRR would have found Continental and Hiland Partners, LP were not affiliates and their Combined Purchase Agreement was at arm's-length under 30 C.F.R. § 206.151 (2007) throughout 2007-2008.

45.     Had the ONRR assessed the correct entities, the ONRR would have found Mr. Hamm indirectly owned less than 40% of Hiland Partners, LP, as demonstrated by the administrative record.  With less than 50% common ownership, the ONRR would therefore have been required to analyze and apply the five factors under 30 C.F.R. § 206.151 (2007).  However, the administrative record shows the ONRR applied only one of the five factors required and applied that single factor to the wrong entity – Hiland Partners, LLC.

46.     In addition, had the ONRR assessed the correct entities, the ONRR would have found Mr. Hamm held no position in Hiland Partners, LP, as demonstrated by the administrative record.  The ONRR also would have found Mr. Moeder likewise held no position in Hiland Partners, LP and resigned from Continental by March 7, 2006, as demonstrated by the

administrative record.

47.     For purposes of determining whether the Combined Purchase Agreement was at arm's length, the administrative record shows not only the ONRR analyzed the wrong entities for purposes of affiliation but also the ONRR completely neglected to analyze whether the transacting parties had "opposing economic interests" regarding their contract, a required element under 30 C.F.R. § 206.151 (2007).

48.     Had the ONRR analyzed this element, the ONRR would have found the Combined Purchase Agreement was negotiated by arm's-length parties and shows opposing economic interests between Continental and Hiland Partners, LP, as demonstrated by the administrative record.

49.     By failing to assess the correct entities and by failing to properly apply the regulations, including the five-factor test and "opposing economic interests" element under 30 C.F.R. § 206.151 (2007), the Decision is arbitrary, capricious, and contrary to law.

*The ONRR Incorrectly Valued Continental's Production under 30 C.F.R. § 206.153(c) (2007) and Therefore Incorrectly Assessed Additional Allegedly Due Royalties.*

50.     It is plain on its face that 30 C.F.R. § 206.153(c) (2007) cannot apply to Continental's sales to Hiland Partners, LP because Section 153(c) applies to "residue gas or any gas plant product which is not sold pursuant to an arm's-length contract."

51.     The administrative record shows Continental did not sell residue gas or gas plant products from the Leases.  Instead, it sold gas to Hiland Partners, LP still in unprocessed form.

52.     The Decision recognized Continental sold unprocessed gas:  "Continental sells unprocessed gas to Hiland [Partners, LLC]."  (Decision at 6.)

53.     The administrative record also shows Hiland Partners, LP sold its residue gas and

gas plant products at arm's-length.

54.     The Decision held (though assessing the wrong entities) that "Hiland [Partners, LLC] sold its residue gas to the Rainbow Gas Company (Rainbow) and its NGLs to KN Gas Gathering, Inc. (KN) throughout the Audit Period.  Hiland [Partners, LLC]'s sales to Rainbow and KN were at arm's-length."  (Decision at 3.)

55.     The ONRR's rationale that Section 153(c) applies is unlawful.  The ONRR may not simply ignore the plain text of its own regulations.  *See, e.g.*, *Fina Oil & Chem. Co. v. Norton*, 332 F.3d 672, 673 (D.C. Cir. 2003).   If the ONRR wishes to apply the valuation methodology set out in Section 153(c) to non-arm's-length sales of gas that is subsequently processed and sold at arm's-length, it is free to do so through notice-and-comment rulemaking. Indeed, the ONRR did just that in 2016 but rescinded the rule in 2017.  The ONRR, however, cannot modify its regulations by interpreting them in ways that run directly contrary to their plain meaning.  "Unprocessed gas" is not "residue gas and gas plant products" – and indeed is the opposite of it.  An agency cannot "correctly" interpret a term to be its antonym – here, interpreting *unprocessed* gas to mean *processed* gas products.

56.     Principles of deference cannot save the ONRR's "interpretation" of its regulations because Section 153(c) unambiguously does not apply here.   *See, e.g., Chase Bank USA, N.A. v. McCoy*, 562 U.S. 195, 208 [131 S.Ct. 871, 880] (2011) (*Auer* deference does not apply when an agency's interpretation is "plainly erroneous or inconsistent with the regulation." (citation omitted)).  In addition, deference should not apply as the ONRR has failed to give fair notice of its interpretation, it has not consistently interpreted its regulations, and "there is reason to suspect that the agency's interpretation 'does not reflect the agency's fair and considered judgment on the matter in question.'" *Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142, 155 [132 S.

Ct. 2156, 2166] (2012) (citation omitted).

57.     In addition, the ONRR's actions violate Continental's due process rights.  It is a "fundamental principle in our legal system . . . that laws which regulate persons or entities must give fair notice of conduct that is forbidden or required."  *FCC v. Fox Television Stations, Inc.*, 567 U.S. 239, 253 [132 S. Ct. 2307, 2317] (2012).  The ONRR's interpretation cannot satisfy that standard.  Without any guidance or prior decisions that could provide fair notice, the ONRR applied a provision – Section 153(c) – that by its terms plainly does not apply.

58.     Moreover, the ONRR's 2004 audit *approved* of Continental's use of Section 152 to value its production from the Unit, further exacerbating the lack of notice that the ONRR might apply Section 153(c).  Thus, even if the ONRR's interpretation could be upheld, its application of Section 153(c) was unforeseeable.  Continental lacked fair notice that the ONRR would contort the regulations' text to reach the (at best) counter-intuitive interpretation here, resulting in Continental's exposure to over $500,000 in additional royalties.

## COUNT I

## <u>VIOLATIONS OF THE ADMINISTRATIVE PROCEDURE ACT</u><br><u>AGAINST ALL DEFENDANTS</u>

59.     Continental repeats and re-alleges the allegations in the preceding paragraphs, as if fully set forth herein.

60.     Defendants' conclusion that Continental and Hiland Partners, LLC were parties to a non-arm's-length sales contract under 30 C.F.R. § 206.151 (2007) was arbitrary and capricious, an abuse of discretion, and contrary to law.  The ONRR made findings that lack support in the administrative record, improperly applied the tests for affiliation to the wrong entity, and improperly relied on outdated audit information.

61.     Had the ONRR assessed the right legal entity, the administrative record shows Continental and Hiland Partners, LP were neither affiliated nor commonly controlled, Continental and Hiland Partners, LP had opposing economic interests with regard to the Combined Purchase Agreement, and Continental's transactions with Hiland Partners, LP during 2007-2008 were at arm's length, as Continental argued during the administrative appeals process.

62.     In addition, Defendants' use of 30 C.F.R. § 206.153(c) (2007) to assess additional royalties from Continental is arbitrary and capricious, an abuse of discretion, and contrary to law, because it applies the governing regulations in a way that directly contradicts their plain text and fails to provide an adequate rationale to sustain the Decision.

63.     Under the regulations, gas sold under a percentage-of-index contract was to be valued differently if the sales purchaser was deemed an affiliate and the sales contract non-arm's-length.   *See* 30 C.F.R. §§ 206.152(c) (2007) (unprocessed gas), 206.153(c) (2007) (processed gas).   However, that valuation is not to be based on the lessee's affiliate's resale prices.   That valuation (in Continental's case) is not to be based on Hiland Partners, LP's resale prices.   Such valuation has been prohibited by *Fina Oil*.

64.     In this case, although the Director of the ONRR recognized the limitations of *Fina Oil* on page 7 and in footnote 9 of the Decision, the ONRR nevertheless chose to base its valuation of Continental's unprocessed gas on Hiland Partners, LP's resale prices anyway under Section 153(c).

65.     Furthermore, the ONRR incorrectly applied the "benchmarks" under Section 153(c) – *e.g.*, 30 C.F.R. § 206.153(c)(1) (2007) ("**Section 153(c)(1)**") and 30 C.F.R. § 206.153(c)(2) (2007) ("**Section 153(c)(2)**") – to value Hiland Partners, LP's sales of processed

gas to third parties because it is undisputed those sales were *arm's-length* transactions. Section 153(c)(1) and Section 153(c)(2) apply only to *non-arm's-length* transactions. *See* 30 C.F.R. § 206.153(c) (2007) ("The value of residue gas or any gas plant product which is not sold pursuant to an arm's-length contract shall be the reasonable value determined in accordance with the first applicable of the following methods[.]").

66.      Furthermore, under Section 153(c)(1), the first "benchmark" to value a lessee's sale to its affiliate is the proceeds received by "the lessee" from the sale of residue gas and natural gas liquids. However, in this case, because Continental did not sell residue gas or natural gas liquids, Section 153(c)(1) makes sense only if Hiland Partners, LP is deemed part of Continental, who is "the lessee." *Fina Oil* forbids such a conclusion.

67.      The ONRR also incorrectly applied Section 153(c)(1), on page 9 of the Decision, by requiring Continental to provide evidence that its proceeds received for the sale of its unprocessed gas are comparable to the proceeds Hiland Partners, LP receives for residue gas and gas plant products. The regulations do *not* limit a demonstration of comparability to only the lessee's purchaser but, in fact, allow comparability to be established from "a reasonable sample[] from nearby plants." *See* 30 C.F.R. § 206.153(c)(1) (2007).

68.      Likewise, under Section 153(c)(2), the second "benchmark" to value a lessee's sale to its affiliate is a value determined by like-quality residue gas and natural gas liquids. However, in this case, because Continental did not sell residue gas or natural gas liquids, Section 153(c)(2) also makes sense only if Hiland Partners, LP is deemed part of Continental because, otherwise, Continental could never find residue gas and natural gas liquids that are of like-quality to its production, as the lessee – which was *unprocessed* gas.

69.      The Decision is also arbitrary and capricious and an abuse of discretion because it

departs from the Department's prior acceptance of Continental's royalty calculations for the Leases without adequate explanation.

70.     The Decision also violates the APA in that it substantially departs from the Department's prior interpretation of its regulations without notice-and-comment rulemaking. *See Fina Oil*, 332 F.3d at 676 ("[T]o prevent agencies from circumventing the notice-and-comment process by rewriting regulations under the guise of interpreting them, we will reject an agency interpretation that is 'plainly erroneous or inconsistent with the regulation.'" (citation omitted)).

## COUNT II

## VIOLATIONS OF THE MINING LEASING ACT AGAINST ALL DEFENDANTS

71.     Continental repeats and re-alleges the allegations of the preceding paragraphs, as if fully set forth herein.

72.     The Decision violates the Mineral Leasing Act, 30 U.S.C. § 181 *et seq.*, because it fails to determine royalties based on the "value of production." 30 U.S.C. § 226.

## COUNT III

## DUE PROCESS VIOLATIONS AGAINST ALL DEFENDANTS

73.     Continental repeats and re-alleges the allegations of preceding paragraphs, as if fully set forth herein.

74.     The Decision violates Continental's rights under the Due Process Clause of the Fifth Amendment to the United States Constitution because the ONRR failed to provide fair notice of its counter-textual interpretation of the valuation regulations.

## PRAYER FOR RELIEF

WHEREFORE, Continental prays that the Court:

(a)     Hold unlawful and vacate the Decision and underlying Order as arbitrary and capricious, an abuse of discretion, and/or otherwise not in accordance with the law;

(b)     Enter a declaratory judgment that the Decision and underlying Order are arbitrary and capricious, an abuse of discretion, and/or otherwise not in accordance with the law;

(c)     Enter a declaratory judgment that Defendants unlawfully applied Section 153(c) to the relevant gas products at issue and that such products must instead be valued under Section 152 or, in the alternative, Section 153(b) or Section 153(h);

(d)     Award Continental its costs and attorneys' fees to the extent permitted by law; and

(e)     Grant such other relief as may be appropriate in the circumstances.

Respectfully submitted this 23rd day of October, 2017.

BAKER & HOSTETLER LLP

*/s/ L. Poe Leggette*
L. Poe Leggette
Rosario C. Doriott Domínguez
pleggette@bakerlaw.com
rdoriottdominguez@bakerlaw.com
1801 California Street, Suite 4400
Denver, Colorado 80202-2662
Telephone: 303.861.0600
Facsimile: 303.861.7805

*Attorneys for Plaintiff Continental Resources, Inc.*